1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

CYNTHIA BOYD,

11

Plaintiff,

CASE NO. 11-cv-6030-BHS-JRC

12

v.

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

13

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

14

Noting Date: February 1, 2013

15

Defendant.

16

17

        This matter has been referred to United States Magistrate Judge J. Richard

18

Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19

4(a)(4), and as authorized by *Mathews, Secretary of  H.E.W. v. Weber*, 423 U.S. 261,

20

271-72 (1976).  Both parties have filed a brief, including plaintiff's Opening Brief and

21

defendant's Response (*see* ECF Nos. 15, 19).

22

        In this matter, the ALJ erred by relying solely on evidence offered by non-

23

examining, records reviewers over the opinions of all of the doctors who examined or

24

treated plaintiff. Specifically, the ALJ rejected all of the examining and treating doctors' opinions in a general summary statement, finding that all of the opinions from doctors who examined plaintiff were unsupported by objective clinical findings and were inconsistent with the overall evidence. Not only were the doctors' opinions supported by their own objective clinical findings, but also, an ALJ must explain why doctors' opinions are rejected. A summary statement is insufficient to explain the rejection of all of the opinions from treating and examining doctors.

The ALJ also erred by failing to discuss lay evidence. Therefore, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

<u>BACKGROUND</u>

Plaintiff, CYNTHIA BOYD, was twenty five years old on her date of alleged disability onset of December 15, 2003 (*see* Tr. 18, 129). Plaintiff finished eighth grade and did not obtain a GED (*see* Tr. 39). She testified that she stopped working as a registered nursing assistant ("R.N.") in 2003 because she was experiencing severe vertigo, anxiety and panic attacks (*see* Tr. 40). She had worked as a R.N. for approximately six years, since she was sixteen years old (*see* Tr. 39-40). At the time of her administrative hearing, plaintiff had at least the severe impairments of diabetes mellitus, Meniere's disease; coarctation of the aorta; asthma; obesity; affective disorder; and anxiety disorder (*see* Tr. 20).

Plaintiff started suffering from vertigo when she was twenty three years old (*see* Tr. 41). Although she was in an accident when she was thirteen years old, she was twenty

three when she first woke up in the middle of the night with severe dizziness (*id.*). At the time, plaintiff's doctors determined that she had Meniere's Disease (*id.*). However, according to plaintiff, for the first time in ten years, one of plaintiff's doctors now has questioned that diagnosis due to a change in plaintiff's symptoms (*id.*). Plaintiff's ringing in her ears has decreased, her vertigo has increased and she began vomiting more often (Tr. 41-42).

Plaintiff testified that her anxiety and depression began when her vertigo started, when she was twenty three years old (*see* Tr. 45). She testified that she had been taking medication continuously for her mental impairments since that time (*see id.*). Plaintiff's testimony differs from the ALJ's unexplained contrary finding that plaintiff had not been taking any psychoactive medication (*see* Tr. 21).

Plaintiff testified that she had started mental health counseling only recently, as she had not been advised to initiate such counseling previously (*see id.*). She also suggested that part of her reluctance to attend mental health counseling was because she didn't go out of the house (*see* Tr. 47). She indicated that she "really would have liked if they would come and visit me at my home but that was not going to happen" (*id.*). Plaintiff testified that the only other mental health counseling that she had received was a yearly appointment with a therapist (*see* Tr. 46).

Plaintiff also testified regarding her aortic coarctation (*see* Tr. 47-48). Plaintiff had open heart surgery when she was two months old and testified that her valve still regurgitated blood back into her heart (*see* Tr. 47). This condition was being watched by

her doctors and she testified that no further treatment was required at that time for her coarctation of the aorta (*see* Tr. 48).

PROCEDURAL HISTORY

On March 22, 2007, plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") pursuant to Title II, and for supplemental security income ("SSI") pursuant to Title XVI (*see* Tr. 18, 129-32; *see also* Tr. 123-28, 133-36). Her applications were denied initially and following reconsideration in June and September, 2007 respectively (77-80, 86-89). Plaintiff's requested hearing was held before Administrative Law Judge Gary J. Suttles ("the ALJ") on March 24, 2010 (*see* Tr. 35-70). On April 21, 2010, the ALJ issued a written decision in which he found that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 15-29).

On October 13, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court, seeking judicial review of the ALJ's written decision (see ECF Nos. 1, 4). Defendant filed the sealed administrative record regarding this matter ("Tr.") on May 15, 2012 (see Tr. 10, 11). In her Opening Brief, among other issues contested, plaintiff contends that the ALJ erred in his review of the lay evidence and in his review of the medical evidence offered by treating doctor, Dr. Fleischman; and examining psychologists, Drs. Brown, Wheeler and Krueger (*see* ECF No. 15, pp. 12-13). Plaintiff contends that the ALJ erred in relying solely on evidence offered by non-examining, records reviewers over the opinions of all of the doctors who examined or treated plaintiff (*see id.*).

1

<u>STANDARD OF REVIEW</u>

2

Plaintiff bears the burden of proving disability within the meaning of the Social

3

Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on

4

the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*,

5

172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

6

(9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines

7

disability as the "inability to engage in any substantial gainful activity" due to a physical

8

or mental impairment "which can be expected to result in death or which has lasted, or

9

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C.

10

§§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's

11

impairments are of such severity that plaintiff is unable to do previous work, and cannot,

12

considering the plaintiff's age, education, and work experience, engage in any other

13

substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

14

1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

15

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

16

denial of social security benefits if the ALJ's findings are based on legal error or not

17

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

18

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

19

1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

20

such "'relevant evidence as a reasonable mind might accept as adequate to support a

21

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.

22

*Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

23

24

389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra,* 53 F.3d at 1039). In addition, the Court must independently determine whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

DISCUSSION

1. **The ALJ erred by failing to review the lay evidence offered by plaintiff's sister, Ms. Malissa Ratliff ("Ms. Ratliff").**

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," *see* 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," *see* 20 C.F.R. § 404.1513 (d)(4), and "other sources" such as nurse practitioners and chiropractors, who are considered other medical sources, *see* 20 C.F.R. § 404.1513 (d)(1). *See also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL 2329939. An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

Here, the ALJ failed to consider the lay witness statement offered by Ms. Ratliff, committing legal error. *See id. (see also* Tr. 162-69). Although defendant contends that Ms. Ratliff's statement did not need to be discussed because she did not provide any

opinions on the issue of how plaintiff's impairments impacted her ability to work, the Court does not agree, as discussed below (*see* Response, ECF No. 19, p. 3).

Defendant also offers various reasons as to why the lay evidence could have been rejected, however none of those reasons actually were offered by the ALJ as a reason to discount Ms. Ratliff's statements, giving these arguments little basis in law in the context of this case. *See id.; see also Bray*, *supra*, 554 F.3d at 1226-27 (*citing Chenery Corp.*, *supra*, 332 U.S. at 196 (other citation omitted)) ("[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking"). As indicated by the Ninth Circuit, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

On April 13, 2007, almost a year before plaintiff's insured status expired on March 31, 2008, her sister, Ms. Ratliff provided a lay witness statement (*see* Tr. 162-69). For example, Ms. Ratliff indicated that plaintiff had problems getting along with others as she was edgy and anxious and had anger problems (*see* Tr. 166). Specifically, Ms. Ratliff indicated that plaintiff was fired or laid off from a nursing home job because she "could not get along w[ith her] boss" (*see* Tr. 168). Ms. Ratliff also indicated that plaintiff's impairments affected plaintiff's ability to complete tasks; concentrate; understand; follow instructions; get along with others; drive; or be alone (*see* Tr. 167, 168). Regarding physical limitations, Ms. Ratliff indicated that plaintiff could not squat

without falling over and she could walk only for about ten minutes (*see* Tr. 167). Ms. Ratliff opined that plaintiff's impairments affected plaintiff's ability to lift, squat, bend, walk, and kneel (*id.*).

The Court finds that Ms. Ratliff's statements regarding plaintiff's impairments and their resulting functional limitations relate directly to the question of how plaintiff's impairments affected her ability to work. Therefore, the Court is not persuaded by defendant's statement that Ms. Ratliff did not provide any opinions regarding how plaintiff's impairments impacted her ability to work. *See* Defendant's Response Brief, ECF No. 19, at 3. In fact, defendant's argument on this point has no basis in fact.

Specifically within the context of lay witness evidence, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout, supra*, 454 F.3d at 1056 (reviewing cases). However, if the ALJ has provided proper reasons to discount the lay testimony in another aspect of the written decision, such as within the discussion of plaintiff's credibility, the lay testimony may be considered discounted properly even if the ALJ fails to link explicitly the proper reasons to discount the lay testimony to the lay testimony itself. *See Molina, supra*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46 (*quoting Lewis, supra*, 236 F.3d at 512). The Court will not reverse a decision by an ALJ in which the errors are harmless and do not affect the ultimate decision regarding disability. *See Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26,

1    \*32-\*36, \*45-\*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407

2    (2009).

3        Here, the ALJ failed to mention the lay statement and did not provide any proper

4    reason to discount the lay testimony in any aspect of the written decision. *See Molina,*

5    *supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at \*24-\*26, \*32-\*36, \*45-\*46; *see*

6    *also* 28 U.S.C. § 2111; *Shinsheki, supra*, 556 U.S. at 407. [1]  For example, the ALJ does

7    not give any reason in his written decision not to credit Ms. Ratliff's opinion that plaintiff

8    had difficulties getting along with others, including supervisors. This opinion was shared

9    at least once by every one of plaintiff's examining doctors, such as Dr. Norma L. Brown,

10   Ph.D., who opined that plaintiff suffered from marked limitation in her ability to relate to

12   _____

13       [1] The Court also finds troubling defendant's misstatement of the law, with regard to an
     ALJ's obligation to provide germane reasons for rejecting lay testimony. While defendant cites
14   *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012) for the proposition that that an ALJ is not
     required to address each witness "on an individualized witness-by-witness basis," *see*
15   Defendant's Response Brief, ECF No. 19, p. 2, the quoted passage, placed in proper context,
     makes clear that the ALJ does have the responsibility of commenting on each lay witness whose
16   opinion is disregarded.  The full context of the quoted passage reads as follows:

17       We have held that competent lay witness testimony "*cannot* be disregarded without
         comment," *Nguyen,* 100 F.3d at 1467, and that in order to discount competent lay witness
18       testimony, the ALJ "must give reasons that are germane to each witness," *Dodrill,* 12
         F.3d at 919. We have not, however, required the ALJ to discuss every witness's testimony
19       on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons
         for rejecting testimony by one witness, the ALJ need only point to those reasons when
20       rejecting similar testimony by a different witness.

21   *Molina, supra*, 674 F.3d at 1114 (emphasis in original, citations omitted).

22       Here, not only did the ALJ make no reference to Ms. Ratliff's opinions, which he
     disregarded without comment, but then, defendant's counsel compounds the problem
23   by claiming that the ALJ didn't have to do so.  The Court will assume that this was merely a
     mistake by defendant's counsel.  Otherwise, it could have grave consequences under Fed. R. Civ.
24   P. 11(b).

coworkers and supervisors (*see* Tr. 268; *see also* Tr. 254 (Dr. Wheeler opined that

plaintiff suffered from moderate limitations in her ability to relate appropriately to

coworkers and supervisors); Tr. 462 (Dr. Kruger provides identical opinion)). The ALJ

also committed legal error by failing to provide any specific reason to discount this

particular opinion of Dr. Brown, as discussed further below. *See infra*, section 2.

In fact, the ALJ's written decision is lacking proper reasons to discount any of the

opinions regarding functional limitations, as discussed more fully below*, see infra*,

section 2. For example, although Ms. Ratliff opined that plaintiff's ability to concentrate

was affected by her impairments and that plaintiff had problems getting along with

others, the ALJ found that plaintiff was "able to get along with others, understand simple

instructions, [and] concentrate on and perform simple tasks" (Tr. 22). The ALJ failed to

explain why Ms. Ratliff's opinions were not credited fully.

Because of the ALJ's failure to discuss the lay evidence, and because of his failure

to provide adequate reasons to discount the lay evidence elsewhere in his written

decision, this matter should be reversed and remanded for further consideration. The

opinions from Ms. Ratliff were relevant to the ultimate disability decision of the ALJ, and

the ALJ's error in failing to review her statement is not a harmless error.

//

//

//

2.   **The ALJ erred in his review of the medical evidence offered by treating doctor, Dr. Fleischman; and in his review of the medical evidence offered by examining psychologists, Drs. Brown, Wheeler and Krueger.**

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also* 20 C.F.R. § 416.902 (treating physician is one who provides treatment and has "ongoing treatment relationship" with claimant). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9. However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In addition, "[a] physician's opinion of disability 'premised to a large extent upon [plaintiff]'s own accounts of h[er] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan, supra,* 169 F.3d at 602 (*quoting Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (*citing Brawner v. Sec. HHS*, 839 F.2d 432, 433-34 (9th Cir. 1988))).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews, supra*, 53 F.3d at 1043). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In general, more weight is given to a treating medical source's opinion than to the opinions of those who do not treat the claimant. *Lester, supra*, 81 F.3d at 830 (*citing Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). On the other hand, an ALJ need not accept the opinion of a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings or by the record as a whole. *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d). A non-examining physician's or psychologist's opinion may not constitute substantial evidence by itself

sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at 752). "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831); *see also* 20 C.F.R. § 404.1527(d)(2)(i).

**Plaintiff's treating physician**

Dr. Sally Fleischman, M.D., plaintiff's treating physician, provided an opinion regarding plaintiff's residual functional capacity on March 4, 2010 (*see* Tr. 514-18). She indicated that she had been plaintiff's physician since January, 2009 (*see* Tr. 514). She also indicated her diagnoses of "Dizziness (presumed Meniere's disease), Type II Diabetes, Chronic LBP [low back pain], [and] Anxiety disorder" (*see* Tr. 514). Dr. Fleischman opined that plaintiff was incapable of even "low stress" jobs (*see* Tr. 515). In addition, Dr. Fleishman indicated specifically on October 12, 2009 that plaintiff suffered from marked interference with many work related activities due to her impairments (*see* Tr. 457).

**Plaintiff's examining psychological doctors**

Dr. Keith Krueger, Ph.D. examined plaintiff on February 23, 2009 (*see* Tr. 469-76). He conducted a mental status examination ("MSE") (*see* Tr. 474-76). Dr. Krueger

assessed that plaintiff demonstrated marginal to poor insight and marginal memory and concentration overall on her MSE (*see* Tr. 474). Dr. Kruger indicated specific opinions regarding plaintiff's ability to work, such as that plaintiff had a markedly severe limitation in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting (*see* Tr. 471).

Dr. Krueger likewise examined plaintiff on October 20, 2009 and again conducted a MSE (*see* Tr. 459-68). He opined that plaintiff suffered from limited concentration (*see* Tr. 460). Dr. Krueger opined that plaintiff's limited concentration would have a markedly severe affect on plaintiff's ability to learn new tasks efficiently (*see id.*). He also opined that plaintiff suffered from markedly severe limitations on her abilities to interact appropriately in public contacts; to respond appropriately to and tolerate the pressures and expectations of a normal work setting; and maintain appropriate behavior in a work setting (*see* Tr. 462).

Dr. Norma L. Brown, Ph.D. examined plaintiff on November 22, 2004 (see Tr. 292-305). She conducted a MSE (*see* Tr. 296-98). For example, Dr. Brown observed that plaintiff was highly anxious, and noted that plaintiff's husband came with her to the appointment (*see* Tr. 296). Dr. Brown observed a restricted/constricted affect (*see* Tr. 298). She assessed that plaintiff demonstrated a poor fund of knowledge (*see* Tr. 296) and poor judgment/problem solving skills (*see* Tr. 292, 297).

Dr. Brown provided specific opinions regarding plaintiff's limitation from her impairments on her ability to function in a work environment (*see* Tr. 294). For example,

1  Dr. Brown opined that plaintiff suffered from severe limitations on her ability to perform

2  routine tasks (*see id.*). Similar to the opinion from Dr. Krueger, Dr. Brown also opined

3  that plaintiff suffered from severe limitations on her ability to respond appropriately to

4  and tolerate the pressures and expectations of a normal work setting (*see id.*). Dr. Brown

5  indicated that plaintiff suffered from markedly severe limitations on her abilities to relate

6  appropriately to coworkers and supervisors; to care for self, including personal hygiene

7  and appearance; to control physical or motor movements and maintain appropriate

8  behavior; and perform routine tasks (*see id.*).

9        Dr. Brown examined plaintiff again on May 11, 2005 (*see* Tr. 266-79) and again

10  performed a MSE (*see* Tr. 270-72). She assessed that plaintiff demonstrated poor

11  concentration and low math skills (*see* Tr. 271). Dr. Brown also assessed that plaintiff

12  demonstrated very low judgment and problem solving skills (*see id.*). Dr. Brown noted

13  that plaintiff was a victim of domestic violence as a child and assessed that plaintiff

14  suffered from poor insight (*see* Tr. 272).

15        Dr. Brown again provided specific opinions regarding plaintiff's ability to

16  function in a work setting (*see* Tr. 268). She opined that plaintiff suffered from severe

17  limitations in her ability to perform routine tasks; and to respond appropriately to and

18  tolerate the pressures and expectations of a normal work setting (*see id.*). Dr. Brown also

19  opined that plaintiff suffered from markedly severe limitations on her abilities to

20  understand, remember and follow complex instructions; to learn new tasks; to relate

21  appropriately to coworkers and supervisors; to interact appropriately in public contacts;

22  and to control physical or motor movements and maintain appropriate behavior (*see id.*).

1    Dr. Kimberly Wheeler, Ph.D. examined plaintiff on March 23, 2006 (see Tr. 252-

2  65). She conducted a MSE (*see* Tr. 256-58). Dr. Wheeler opined that plaintiff suffered

3  from markedly severe limitations on her abilities to exercise judgment and make

4  decisions; to interact appropriately in public contacts; and to respond appropriately to and

5  tolerate the pressures and expectations of a normal work setting (*see* Tr. 254). Dr.

6  Wheeler explained that plaintiff made decisions about interactions and commitments

7  based on anxiety, and with anticipation of anxiety, withdrew from situations (*see id.*).

8    Dr. Wheeler again examined plaintiff on February 1, 2007 (*see* Tr. 242-51) and

9  performed a MSE (*see* Tr. 246-48). Dr. Wheeler again assessed that plaintiff suffered

10  from markedly severe limitations on her ability to respond appropriately to and tolerate

11  the pressures and expectations of a normal work setting (*see* Tr. 244).

12    Here, the ALJ included the following discussion regarding the opinions from

13  plaintiff's treating doctor and examining doctors:

14
> Insofar as the opinions of Dr. Brown, Dr. Wheeler, Dr. Krueger, and Dr.
> Fleischman are inconsistent with the residual functional capacity stated
> above, these opinions are given little weight because they are
> unsupported by objective clinical findings and are inconsistent with the
> evidence considered as a whole. Specifically, on May 27, 2006, Cheryl
> Graf, ARNP, reported that the claimant's vertigo had improved (internal
> citation to Exhibit 5F, page 29). On February 12, 2007, Robin Garcia,
> PA-C, reported that he claimant denied any difficulty with breathing,
> fainting, or chest pain. She had no shortness of breath, palpitations, or
> leg cramps (internal citation to Exhibit 5F, page 9). As noted, the
> claimant testified that she had not seen a mental health professional until
> 1 day before the hearing. She was not taking psychoactive medication.
> Additionally, her physician reported that she may not have Meniere's
> disease. In any event, the claimant has not reported persistent and
> uncontrollable dizziness to her treating physician.

(Tr. 26).

As discussed above, Drs. Brown, Wheeler and Krueger all examined plaintiff on multiple occasions and performed multiple MSEs. The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The MSE generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3.  A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at

725; *see also Blankenship, supra*, 874 F.2d at 1121 ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (*quoting Poulin v. Bowen*, 817 F.2d 865, 873074 (D.C. Cir. 1987)).

As an initial matter, the Court notes that the ALJ appears to have misunderstood the meaning and import of the MSE. Although the ALJ found that Dr. Brown, Dr. Wheeler and Dr. Krueger provided opinions not based on objective clinical findings, the MSE, as indicated previously, "is termed the *objective* portion of the patient evaluation." *See* Trzepacz, *supra*, The Psychiatric Mental Status Examination 4 (emphasis in original). In addition, the Court specifically has identified some of the objective observations and assessments of the examining doctors from their reports in the discussion above, *see supra*, DISCUSSION, section 1. Based on a review of the relevant record, the Court finds that the ALJ's finding that plaintiff's examining doctors' opinions were not based on objective clinical findings is not based on substantial evidence in the record as a whole. *See Magallanes*, *supra*, 881 F.2d at 750 (*quoting Davis*, *supra*, 868 F.2d at 325-26).

Secondly, although the ALJ found that the opinions of examining doctors, Drs. Brown, Wheeler and Krueger, were inconsistent with the evidence considered as a whole, the only evidence specified by the ALJ is a few pieces of information about some of plaintiff's physical complaints (*see* Tr. 26). Regarding plaintiff's mental impairments, the ALJ does not explain why the fact that plaintiff was not receiving mental health treatment

1   necessarily negates the functional opinions of examining mental health specialists

2   regarding plaintiff's ability to work.

3          When a mental illness is involved, assuming that a failure to comply with

4   prescribed treatment suggests a *willful* failure to comply with prescribed treatment can be

5   illogical. This is in part because a person suffering from a mental illness may not realize

6   that she needs her medication, or she may not even realize that her "condition reflects a

7   potentially serious mental illness." *See Van Nguyen*, *supra*, 100 F.3d at 1465. "'[I]t is a

8   questionable practice to chastise one with a mental impairment for the exercise of poor

9   judgment in seeking rehabilitation.'" *Id.* (*quoting* with approval, *Blankenship v. Bowen*,

10  874 F.2d 1116, 1124 (6th Cir. 1989)).

11

12         Although it is a questionable practice to chastise one with a mental impairment

13  with faulty judgment in failing to seek mental health treatment, it is an even more

14  questionable practice to imply without further explanation that a mentally ill person's

15  failure to seek mental health treatment negates the opinions of mental health specialists

16  who examine the person and perform mental status examinations. *Cf. id.*

17         In addition, the ALJ's finding that plaintiff was not taking any psychoactive

18  medication is contrary to plaintiff's testimony and contrary to subsequent notations in the

19  record (*see* Tr. 45, 519). The ALJ has not explained this finding, which appears to be

20  lacking substantial evidence in the record as a whole. *See Magallanes*, *supra*, 881 F.2d at

21  750 (*quoting Davis*, *supra*, 868 F.2d at 325-26).

22

23         For the stated reasons and based on the relevant record, the Court finds that the

24  findings by the ALJ regarding the opinions of Drs. Brown, Krueger and Wheeler are not

1   based on substantial evidence in the record as a whole. *See Magallanes*, *supra*, 881 F.2d

2   at 750 (*quoting Davis*, *supra*, 868 F.2d at 325-26).  The Court concludes that the ALJ

3   failed to provide specific and legitimate reasons for his failure to credit fully opinions

4   from these examining doctors and failed to evaluate the medical evidence properly. *See*

5   *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews*, *supra*, 53 F.3d at 1043).

6        Regarding the opinion of treating physician, Dr. Fleischman, the Court finds that

7   the ALJ did not adequately explain his failure to give controlling weight to Dr.

8   Fleischman's opinion as a treating physician, *see Edlund*, *supra*, 2001 Cal. Daily Op.

9   Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (*citing* SSR 96-2p, 1996 SSR LEXIS

10  9), and failed to provide specific and legitimate reasons for his failure to credit fully Dr.

11  Fleischman's opinions, *see Lester, supra*, 81 F.3d at 830-31 (*citing Andrews*, *supra*, 53

12  F.3d at 1043).

13

14       In a case in which the Ninth Circuit found that an ALJ had failed to provide

15  specific and legitimate reasons supported by substantial evidence in the record for the

16  failure to credit fully the opinion of a treating physician, the written decision by that ALJ

17  had included the following discussion:

18       The opinions of total disability tended [sic] in the record are unsupported
         by sufficient objective findings and contrary to the preponderant
19       conclusions mandated by those objective findings. The duration of the
         claimant's stress treadmill testings and relative lack of positive findings,
20       the results of other laboratory and x-ray testing, the objective
         observations of the physicians of record, all preponderate toward a
21       finding that the claimant has never lost the residual functional capacity
         for light work for any period approaching 12 months.
22

23

24

*Embrey v. Bowen*, 849 F.2d 418, 421 (9th 1988). The Ninth Circuit Court found that these statements by the *Embrey* ALJ were not sufficient to discount the doctors' opinions, even though the *Embrey* ALJ had reviewed the medical evidence *Id.* (citations omitted) The court explained:

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct. Moreover[,] the ALJ's analysis does not give proper weight to the subjective elements of the doctors' diagnoses. The subjective judgments of treating physicians are important, and properly play a part in their medical evaluations.

*Id.* at 421-22 (internal footnote omitted).

The Court finds that this discussion applies to the ALJ's written decision in the matter herein. *See id.* The ALJ here has not provided a detailed explanation of his findings or his interpretations; and, perhaps more importantly, has not explained sufficiently why his interpretations are more correct that plaintiff's treating physician. *See id.* The Court concludes that the ALJ failed to evaluate properly the medical evidence offered by treating physician, Dr. Fleischman, and did not provide specific and legitimate reasons to discount her opinions. *See id.; see also Lester, supra*, 81 F.3d at 830-31; *Andrews, supra*, 53 F.3d at 1043.

The ALJ's failure to evaluate the medical evidence properly provides an additional reason as to why this matter should be reversed and remanded for further consideration.

3. **Despite the errors committed by the ALJ, this matter should be remanded for further proceedings -- not for an award of benefits**.

The ALJ failed to discuss the lay evidence, committing obvious legal error. This lay statement clearly indicates relevant opinions regarding plaintiff's ability to function in a work environment, making the error harmful. The ALJ also provided only a general statement in support of his rejection of all of the opinions from examining and treating doctors, in favor of opinions from medical consultants who never examined plaintiff. Such treatment of the medical evidence is contrary to federal regulations, internal social security regulations and relevant case law.

Nevertheless, credibility assessments and the resolution of conflicts in the medical evidence are within the responsibility of the ALJ. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews*, *supra*, 53 F.3d at 1043.

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir.1996)).

Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. Furthermore, the decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989) (*citing Varney v. Secretary of HHS*, 859 F.2d 1396, 1399 (9th Cir. 1988)).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick*, *supra*, 157 F.3d at 722; *Andrews*, *supra*, 53 F.3d at 1043. If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate for this matter in order to allow the Commissioner the opportunity to consider properly all of the lay and medical evidence as a whole and to incorporate the properly considered lay and medical evidence into the consideration of plaintiff's credibility and residual functional capacity. *See Sample, supra*, 694 F.2d at 642.

CONCLUSION

Based on the stated reasons and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42

U.S.C. § 405(g) to the Commissioner for further consideration.  **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on February 1**,** 2013, as noted in the caption.

Dated this 14th day of January, 2013.

J. Richard Creatura
United States Magistrate Judge